CASE 67—INJUNCTION AGAINST OBSTRUCTING STREAM—MAY 6.

106 561
111 912

106 561
p129 625

# Murray, Etc. v. A. & L. M. Preston.

APPEAL FROM JOHNSON CIRCUIT COURT.

1. NAVIGABLE STREAM.—A stream is a navigable one if it is ordinarily subject to periodical fluctuations attributable to natural causes and recurring naturally, and if its periods of high water and navigable capacity usually continue a sufficient time to make it useful as a highway.
2. SAME—CONSTITUTIONAL LAW.—Unless a stream is navigable in fact the Legislature may not, by declaring it so, deprive the riparian owner of his right to construct water gates and other obstructions without compensation.

JAMES GOBLE FOR THE APPELLANTS.

1. The Legislature has no constitutional power to deprive a riparian owner of his rights by declaring a stream navigable which is not so in fact.
2. The appellee, Arthur Preston, was estopped to claim the right in question because it appears that at the time of the passage of the act he had a right over appellant's land by contract for the purpose of removing the very staves whose removal is the gravamen of this action.

Citations: Acts of 1886-7, vol. 1, p. 62; Wood on Railway Law, vol. 2, pp. 868, 889, 707; Berry v. Snyder, 3 Bush, 277; 8 Bush, 326; Gould on Waters, secs. 54, 108, 109, 243, 241, 242; Cooley on Con. Lim. (5th ed.), pp. 728, 729, 675, 657; Gen. Stat., ch. 77, secs. 1, 9; Robinson v. Swope, 12 Bush, 26.

STEWART & STEWART FOR THE APPELLEES.

1. Chestnut creek is not navigable or floatable in fact for the purpose of floating the products of its forests to market, and appellees had the right to thus use it, being responsible only for damages caused by negligence in exercising that right.
2. The agreement between the parties as to the haul-way over appellant's land can not affect the navigability of Chestnut creek even if the contract by its terms was then in effect or the contract by its terms had expired and appellees had no right under it.
3. Chestnut creek became navigable in law whether navigable in

fact upon the passage of the act of the Legislature declaring it navigable.

Citations: Thunder Bay R. B. Co. v. Speechly, 31 Mich., 336; Gaston v. Mace, 33 W. Va., 14; Angell on Watercourses (7th ed.), sec. 537; Weise v. Smith, 3 Ore., 445; Folger v. Robinson, 3 Ore., 458; Goodins, Ex., v. Ky. Lumber Co., 90 Ky., 625; James v. Carter, 16 Ky. Law Rep., 515; Ford Lumber Co. v. McQueen, 14 Ky. Law Rep., 521; May, &c., v. Blackburn, 15 Ky. Law Rep., 705; Olson v. Merrill, 42 Wis., 203; Thurman v. Morrison, 14 B. M., 296; Pursell v. Stover, 110 Pa. St., ——; Plum v. Mitchell, 16 Ky. Law Rep., 162; Francis v. Ramsey, 16 Ky. Law Rep., 870; Collins v. Howard, 65 N. H., 190; Harold v. Jones, 86 Ala., 274; Jaram v. Patterson, 7 Mon., 644.

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

Appellees had a large quantity of staves on the waters of Chestnut creek, in Johnson county, which they desired to float down the stream, and with this view, obtained an act from the Legislature declaring it a navigable stream. Appellant owned the land on both sides of the creek near its mouth, and had placed water gaps across it, in his fencing; he also had a mill and dam, which he had maintained for many years; and he objected to appellees clearing out the stream and floating their staves out. They then obtained an injunction enjoining him from obstructing the stream, and on final hearing the injunction was made perpetual; and he was required not to put any water gaps across the creek, or do anything else that would interfere with its use as a navigable stream.

He seeks the reversal of this judgment.

The first question is, what is the effect of the act of the Legislature declaring this creek a navigable stream?

The Constitution of the State forbids private property being taken for public use without just compensation being previously made. If the creek was not a navigable stream when this act was passed, it was the private property of

the owners of the adjoining lands. If it was the private property of appellant, within the boundary of his land, the Legislature could not divest him of his rights by simply calling it a navigable stream, when it was not one in fact. The rule on this subject is thus stated in Cooley on Constitutional Limitations (side page 591):

"The question, what is a navigable stream, would seem to be a mixed question of law and fact; and, though it is said that the Legislature of the State may determine whether a stream shall be considered a public highway or not, yet, if in fact it is not one, the Legislature can not make it so by simple declaration, since, if it is private property, the Legislature can not appropriate it to a public use without providing for compensation."

It remains, therefore, to consider whether this creek was in fact a navigable stream when so declared by the Legislature. It is not contended that it was navigable for boats or other water craft, but only that it was a floatable stream. The law in regard to this kind of streams is well stated by a standard author as follows:

"There is a class of streams which, although not navigable by boats or lighters, are yet susceptible, for the whole or a portion of the year, of valuable use for the purpose of floating logs and other products of the country along their banks to market or to mills, and which are considered, to that extent, navigable. But if such stream, in its natural state, is not floatable, it is absolutely private, and, though made floatable by the owner by artificial means, is not subject to public use, nor where it is only fit for that purpose during high water or periodical freshets. A stream that would not float logs without the aid of a person in a canoe, or of

people on the banks, to push them along, and when the logs are frequently injured by the difficulty in passing them through, is not a navigable stream. The public may use a stream for floating logs, although it may injure the riparian owner, or, although it may at times be necessary to go upon its banks to effect such floating, and one is not liable to a riparian owner on whose land they strand. But a needless obstruction, or negligence in any respect, will render the party liable." 6 Lawson, Rights, Remedies and Practice, section 2928.

In Treat v. Lord, 42 Me., 552, [66 Am. Dec., 298], the Supreme Court of Maine said: "The stream, in order to have the character of a public highway, must, in and of itself, have a capacity for floating logs. Such a stream, as well as our larger rivers, will, as experience has universally shown, from its windings and the rush of its waters, especially in times of freshets, cast many of the logs which float upon its bosom upon its shores, intervales, and banks, thereby rendering it necessary to go upon such uplands for the purpose of making a clean drive. Such incidental necessity neither enlarges nor diminishes the natural capacity of the stream, nor in any way affects its public character. . . . While, therefore, it is true that persons driving logs may go upon the banks of our public streams and rivers as necessity may require, it is also true that a stream which is so small and shoal in its bed that no logs can be driven in it without being propelled by persons traveling on its banks is private property, and not subject to such public servitude as is claimed in this case. By the common law it is clear that the public have no right to go upon the banks of ancient navigable rivers for the purpose of towing; and it is said by the court in the case of Brown v. Chadbourne [31 Me., 9; 50 Am. Dec., 641], that

where a river can not be used without towing, or going upon its banks to propel what is floating, such fact would evince its want of capacity for public use; and we think such fact is conclusive that no such public servitude exists."

In the subsequent case of Hooper v. Hobson [57 Me., 273; 99 Am. Dec., 770], the same court said:

"The water makes and defines the highway. . . The right which the public enjoys in a navigable stream is, in general, limited by its banks."

It is not essential that the capacity of the stream should be continuous, to constitute it a public highway. It is sufficient if it is ordinarily subject to periodical fluctuations, attributable to natural causes, and recurring regularly, like the seasons, and if its periods of high water and navigable capacity usually continue a sufficient length of time to make it useful as a highway. After reviewing the authorities in Thunder Bay Booming Co. v. Speechly, 31 Mich., 336 [18 Am. R., 184], Judge Cooley well sums them up thus:

"The doctrine, then, which we derive from the cases, is that a stream may be a public highway for floatage when it is capable, in its ordinary and natural stage in the seasons of high water, of valuable public use."

The rule stated by these authorities forbids Chestnut creek being ranked as a navigable stream. The proof is clear that it is less than four miles long from its mouth to its head on the top of the ridge. It is about ten feet wide, and, though in time of freshets receiving a considerable volume of water, it runs down in a few hours. Notwithstanding there is a quantity of timber on its water shed, the evidence is very unsatisfactory that it has ever been used to any practicable extent for floating logs or other

products. It appears that it was not practicable to use it, even for floating the staves out, without going on the banks and poling them along. Upon the principle that the water is the highway, there can be no highway if the quantity of water is insufficient for its reasonable use for this purpose in ordinary stages of high water. The quantity of water in this creek, its width, its use, and the length of time it remained up in time of freshets, all show that it is only what is commonly known as a "brook" or "branch," and as such was the private property of appellant. He could not be required to take down his water gaps across it, or to allow appellees to pass over it with their staves, against his wishes and without compensation. See Hubbard v. Bell, 5 Am. Rep., 99; Lewis v. Coffee County, 54 Am. Rep., 55; Morgan v. King, 91 Am. Dec., 58.

The judgment is therefore reversed, and cause remanded, with directions to the court below to dissolve the injunction and dismiss the petition.