**UNITED STATES v. LADLEY (STATE OF IDAHO, Intervener).**

No. 1147.

District Court, D. Idaho, N. D.

Aug. 26, 1933.

J. A. Carver, U. S. Dist. Atty., and Sam S. Griffin, Asst. U. S. Dist. Atty., both of Boise, Idaho.

James F. Ailshie, of Cœur d'Alene, Idaho, for defendant.

Bert H. Miller, Atty. Gen., and D. Worth Clark, Asst. Atty. Gen., for the State of Idaho.

CAVANAH, District Judge.

The complaint presents the case to quiet title to property formerly the bed of "Mission Lake" in Boundary county, Idaho, brought by the United States as trustee for certain Indian allottees of the Kootenai Indian Tribe upon the theory that the lake at the time of statehood was nonnavigable, and therefore belonged to the riparian lands allotted to the Indians, the legal title to which was retained by the United States in trust for the use and benefit of the allottees.

The defendant asserts that in July, 1890, at the time of statehood, the lake was a navigable body of water, and by virtue thereof the title to the bed of it was in the state of Idaho, and he, having complied with the laws of the state in September, 1927, has acquired the state's rights; that, should the conclusion be reached that the lake was not a navigable one, the title to it was in the United States in its sovereign capacity, and, as it did not include it in its patents to the allottees, title did not pass to the allottees under the Idaho laws, which recognized riparian owners take only to the high-water mark, and therefore the United States as trustee for the patentees cannot maintain the action; and, further, should it be determined that title was in the United States, he has a ninety-day preference right as a settler on unappropriated public domain.

The state of Idaho intervened for the purpose of asserting rights to the bed of the lake in opposition to both the United States and the defendant, on the ground that the lake was a navigable body of water as far as the United States is concerned, and that the defendant has not succeeded to the state's rights.

We must at once consider certain principles of law which seem applicable to the case before a conclusion is reached as to whether "Mission Lake" was a navigable body of water in July, 1890, at the time of the admission of Idaho into the Union.

■■ As to principles to be laid down, the caution necessary is manifest. They are questions of first magnitude, and their determination may affect the title to many lakes

See, also, 51 F.(2d) 756.

that may be drained as "Mission Lake" was. Undoubtedly the question principally discussed here is that, if the lake was navigable on the admission of the state into the Union, the title to its bed passed from the United States to the state, who became the owner of the soil underlying the navigable waters. The parties recognize that this is so, and concede that, if the lake was nonnavigable at the time of the state's admission into the Union, the claims of the defendant and the state are not tenable. State of Oklahoma v. State of Texas, United States, Intervener, 258 U. S. 574, 42 S. Ct. 406, 66 L. Ed. 771; United States v. Utah, 283 U. S. 64, 51 S. Ct. 438, 75 L. Ed. 844. In the latter case, where the bed of the lake and the upland belongs to the United States, it is free when disposing of the upland to retain the lake bed, and whether it has done so is essentially a question of what it intended. If by the statute or the terms of its patents in disposing of tribal lands of Indians it has shown that it intended to restrict the conveyance to the upland, that intention will of course be controlling, and if, in the absence of intention otherwise manifested, it has assented to its conveyance, it would be given effect according to the state rule of riparian rights. Hardin v. Jordan, 140 U. S. 371, 384, 11 S. Ct. 838, 35 L. Ed. 428; Grand Rapids & Indiana R. R. Co. v. Butler, 159 U. S. 87, 92, 15 S. Ct. 991, 40 L. Ed. 85; Whitaker v. McBride, 197 U. S. 510, 25 S. Ct. 530, 49 L. Ed. 857; Oklahoma v. State of Texas, U. S., Intervener, supra.

The test of navigability is a federal question and which is determinative of the controversy. Each determination must stand on its own facts. It has frequently been stated by the Supreme Court to be: "Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." The Daniel Ball, 10 Wall. 557, 563, 19 L. Ed. 999; United States v. Holt State Bank, 270 U. S. 49, 56, 46 S. Ct. 197, 70 L. Ed. 465; United States v. Utah, supra. The navigability or nonnavigability of a stream or lake not large and well-known must be established by clear evidence. To meet the test of navigability under the law, a water course should be susceptible of use for purposes of commerce or possess a capacity for valuable floatage in the transportation to market the products of the country. It should be of practical usefulness to the public as a public highway in its natural state and without the aid of artificial means. A theoretical or potential navigability or one that is temporary is not sufficient. While the navigable quality of a water course need not be continuous, yet it should continue long enough to be useful and valuable in transportation, and the fluctuations, if any, should come regularly with the seasons, so that the period of navigability may be depended upon. Oklahoma v. State of Texas, United States, Intervener, supra; United States v. Rio Grande Dam & Irr. Co., 174 U. S. 690, 19 S. Ct. 770, 43 L. Ed. 1136; Harrison v. Fite (C. C. A.) 148 F. 781; North American Dredging Co. v. Mintzer et al. (C. C. A.) 245 F. 297. The Idaho law as to navigability, recognized in a case where the test was whether a stream was navigable or not, is "any stream which, in its natural state, will float logs or any other commercial and floatable commodity, is for the time and to that extent a navigable stream," Mashburn v. St. Joe Improvement Co., 19 Idaho, 30, 113 P. 92, 95, 35 L. R. A. (N. S.) 824; and as to the right to condemn uplands for a log reservoir to improve navigability to float logs during short season in high water the Supreme Court of the state further said: "There are many streams in this state that will float logs or lumber during the floodtime or spring freshets, and will not do so during the time that such streams are at the ordinary stage or during low water. If it be true that all such streams are navigable under the provisions of said section 5210, and for that reason the right of eminent domain cannot be exercised with reference to such streams, the power therein given is a mere shadow. * * *" Potlatch Lumber Co. v. Peterson, 12 Idaho, 769, 88 P. 426, 432, 118 Am. St. Rep. 233. Under the law of Idaho at the time of statehood, and when the patents were issued to the allottees, the riparian owner upon a stream, both navigable and nonnavigable, takes title to the bed of the stream; Johnson v. Johnson, 14 Idaho, 561, 95 P. 499, 24 L. R. A. (N. S.) 1240; Moss & Bro. v. Ramey, 14 Idaho, 598, 95 P. 513; Lattig v. Scott, 17 Idaho, 506, 107 P. 47; Fischer v. Davis, 19 Idaho 493, 116 P. 412; Moss & Bro. v. Ramey, 25 Idaho, 1, 136 P. 608; which remained to be the rule until 1915, when the Supreme Court of the state changed it as to navigable lakes and streams, but left it as to nonnavigable streams as before, in holding that the state holds title to the bed of navigable lakes and streams below the natural high-water mark, and that the titles of riparian proprietors of uplands to the shores of the streams are determined by the laws of

the state. Callahan v. Price, 26 Idaho, 745, 146 P. 732; Northern Pac. Ry. Co. v. Hirzel et al., 29 Idaho, 438, 161 P. 854; Burras v. Edward Rutledge Timber Co., 34 Idaho, 606, 202 P. 1067; Miller v. Lewiston-Clarkston Canning Co. et al., 35 Idaho, 669, 209 P. 194. Thus it will be seen that it was the law in Idaho until 1915 that owners took to the middle of the stream, navigable or nonnavigable. In the meantime, the right of the allottees became vested rights, for the trust patents were, excepting one in 1914, issued in 1894, and, the state rule being as thus stated as to both navigable and nonnavigable waters, the United States, with such knowledge, intended that its grants be interpreted in accordance therewith, and hence intended to convey the bed of the lake to the riparian grantees.

■ A legal presumption of navigability is not created by meandering the body of water of a lake when the surveying officers surveyed the land adjacent to the lake, for the officers were not clothed with power to settle questions of navigability. United States v. Boynton et al., 53 F.(2d) 297 (C. C. A. 9); Gauthier v. Morrison, 232 U. S. 452, 34 S. Ct. 384, 58 L. Ed. 680; Hardin v. Jordan, 140 U. S. 371, 11 S. Ct. 838, 35 L. Ed. 428; Oklahoma v. Texas, supra; Johnson v. Johnson, supra.

■ Where the lands of the allottees were held in trust by the United States under 25 USCA § 348, and the trust patents issued thereunder, the United States may maintain suit to determine the riparian rights of the allottees, as it retained title in fee in trust for the use and benefit of the allottees until a named time when it will convey the land to the allottees in fee by the issuance of final patent, U. S. v. Reynolds, 250 U. S. 104, 39 S. Ct. 409, 63 L. Ed. 873. Final patents not having been issued, and these Indians being wards of the nation, they occupy the lands with the consent of the United States under the act and the trust patents, and as a part of the national policy by which they are to be maintained. There arises the duty of protection by the federal government of their property rights, which has been recognized by Congress and the Supreme Court. To say that the United States cannot maintain this suit in case it is held that the lake was a nonnavigable body of water, and where it retains title in fee in trust until final patent is issued for the Indian allottees, is to say that the obligations and duty which the government has assumed and its authority to protect the rights of the riparian owners would be defeated. The present case in this respect comes directly within the scope of the decision in United States v. Rickert,

188 U. S. 432, 23 S. Ct. 478, 480, 47 L. Ed. 532, where the taxing authorities in South Dakota attempted to assess lands held by the allottees, and suit was brought by the United States under the identical act and character of patents as we have here, and the court, in restraining the collection of such taxes, said: "The word 'patents,' where it is first used in this section, was not happily chosen to express the thought which, it is clear, all parts of the section being considered, Congress intended to express. The 'patents' here referred to (although that word has various meanings) were, as the statute plainly imports, nothing more than instruments or memoranda in writing, designed to show that for a period of twenty-five years the United States would hold the land allotted, in trust for the sole use and benefit of the allottee, or, in case of his death, of his heirs, and subsequently, at the expiration of that period,— unless the time was extended by the President,—convey the fee, discharged of the trust and free of all charge or encumbrance. In other words, the United States retained the legal title, giving the Indian allottee a paper or writing, improperly called a patent, showing that at a particular time in the future, unless it was extended by the President, he would be entitled to a regular patent conveying the fee. This interpretation of the statute is in harmony with the explicit declaration that any conveyance of the land, or any contract touching the same, while the United States held the title in trust, should be absolutely null and void. So that the United States retained its hold on the land allotted for the period of twenty-five years after the allotment, and as much longer as the President, in his discretion, should determine." Indeed, where property is held in trust, the statute of Idaho authorizes a "trustee of an express trust * * * may sue [in an action] without joining with him the persons for whose benefit the action is prosecuted." Section 5-303, I. C. A. So it appears clear that the United States may maintain this suit to protect the title to lands allotted to the Indians. Such lands so allotted are subject to the conditions imposed by the act and the conditions in the patent during the trust period, with the right of the allottee to occupy and use the same under a paper which shows that at a particular time in the future, unless extended by the President, he will be entitled to final patent for the fee. United States v. Gardner (C. C. A.) 133 F. 285; Bond v. United States (C. C.) 181 F. 613.

■ Where the United States has issued its trust patents to the allottees under 25 US

CA § 348, the land covered thereby ceased to be a part of the unappropriated public domain upon which a settler could urge a ninety-day preference right if the conclusion is reached that the United States under the act and patents holds the land in trust for the use and benefit of the Indian allottees. Even conceding that the defendant has such a ninety-day preference right, that question cannot be adjudicated in this action under the pleadings and evidence, as such a claim or preference right based only on a claim of right which has not been acquired under the law is not adverse title, but a claim subject to the sovereign's title, which is determinable in the Land Office as an administrative matter. No one has a vested right in any given mode of procedure until such procedure has been used and the right acquired thereunder.

█ With these principles in mind, we are brought to the main issue of fact, which requires us to turn to the evidence and determine whether the lake was navigable in July, 1890, at the time of the state's admission into the Union, which is the time conceded by all to govern in ascertaining that issue. A large part of it relates to the physical characteristics of the lake and a part as to who used it, and the manner in which it was used. The evidence shows an occasional tendency to emphasize the conditions of temporary high-water coming from the Kootenai river through the Jack Wall slough. The lake embraces an area of 139.40 acres, and the weight of the testimony shows that it is an inland body of water which has served to drain the surrounding country, and its principal source of supply is the backwater from the river through the slough. It has a depth of about 3½ feet when the height is not there. Most of the evidence relates to conditions since July, 1890, the time to which we are confined in determining the navigability of the lake, and there appears a sharp conflict in it as to the physical conditions and use of the lake. In the early days it was used principally by the Indians with their canoes in fishing and hunting; as the years went by, both the Indians and white men have at times used it in pleasure boating, hunting, and fishing, and have occasionally removed therefrom with a small launch logs which had been scattered over it and the valley by reason of the high water from Kootenai river flowing through the slough, and the operation of a small boat in going occasionally from Fisher's place across the lake when the surrounding country and the lake were temporarily flooded with high water from the river. During recent years an irrigation district was formed in the vicinity of the lake and a ditch connected with it, which resulted in draining all of the water therefrom, and, when that was done, the defendant attempted to assert a right to possession of the land formerly covered by the water of the lake. The flood waters which covered the lake and the surrounding country were caused by a break in the Kootenai river, which has been repaired. In fact, the surrounding country is barren, and the lake was not used before it was drained for the transportation of products. The evidence justifies the conclusion with reference to springs that they do not feed into the lake, but are located in foothills a mile or so away and drain north through Jack Wall slough. The water in the lake was low during all of the year, except occasionally about six weeks in May and June, when it was flooded from the break in the river. Therefore it may be regarded under the evidence as nothing but a basin of low water that was not and cannot be used for navigable purposes, and does not bring the case under the rules generally recognized as the federal and states rules, as it was not such a course of water that could be said as having been used, or capable of being used, for the purpose of transporting products to market for any practical period of time so that the period of navigability could be depended upon. The rule recognized by the Supreme Court of the state in the case of Mashburn v. St. Joe Improvement Co., supra, was modified in the case of Potlatch Lumber Co. v. Peterson, supra, where the court declined to hold as navigable streams in the state simply because they would float logs or lumber during the flood time or spring freshets, and would not do so during the time that such streams are at their ordinary stage or during the low water; but, however that may be, it will be observed that the facts appearing in the Mashburn and Potlatch Lumber Company Cases are entirely different from the facts here, as we are now considering only an inland small body of water which has been used occasionally for pleasure boating, fishing, and hunting, and removing occasionally logs therefrom which have been placed therein by the flood waters of Kootenai river, and the operation occasionally of a small boat across it when it and the surrounding country were temporarily under high water.

Viewed in any aspect, I perceive no ground on which this small inland body of water can be considered navigable within either the federal or state rule, and especially within the federal rule, which applies and governs in disposing of property of the United States. These considerations lead to the

conclusion that a decree should be entered quieting title to the bed of "Mission Lake" in the United States as trustee for the Indian allottees adjacent to the lake mentioned in the complaint and against the defendant and intervener, with costs.

The government will prepare form of findings and decree in accordance with this decision, and furnish a copy to the defendant and the state of Idaho within six days; and, within eight days after such submission, the draft findings and decree will be submitted to the court.