Argued 25 March; decided 6 April, 1903.

## UNION POWER CO. v. LICHTY.

[71 Pac. 1044.]

EQUITY JURISDICTION WHERE REMEDY AT LAW EXISTS.

1. Though the same judge may preside over a court administering both law and equity, yet these forums are separate, and the latter will not assume jurisdiction of the subject-matter where there is a plain, adequate, and complete remedy at law.

WAIVER OF OBJECTION TO EQUITABLE JURISDICTION.

2. Where facts necessary to confer jurisdiction on a court of equity have been averred and denied, the question of jurisdiction is not waived, but is to be determined on the hearing; and it is the duty of the court to dismiss the suit whenever, during the trial, want of jurisdiction appears.

INJUNCTION AGAINST PROBABLE DESTRUCTION OF ESTATE.

3. A complaint alleging that defendant threatened to continue the construction of a dam in a stream to such height that a sudden discharge of the water, such as he intended to cause, would destroy plaintiff's estate, located further down the stream, stated facts sufficient to give a court of equity jurisdiction, as it showed reasonable ground to apprehend an injury that could not be repaired by a payment of damages.

EVIDENCE AS TO INTERFERENCE WITH USE OF STREAM.

4. Where, in a suit to restrain defendant from interfering with the natural flow of a stream, the evidence shows that defendant never intended to deprive plaintiff of the use of sufficient water to operate its machinery, and that, when he discovered that his interruption of the flow was injuring plaintiff, he, in response to its request, opened his dam, on assurance that the suit would be discontinued, and where it appeared that he did not intend to use the water, except where there was a sufficient quantity to supply plaintiff's demand, there being no apparent probability that a recurrence of the injury would result, there was no error in dismissing the suit.

From Marion: REUBEN P. BOISE, Judge.

This is a suit by the Union Light & Power Co. against John Lichty to restrain the defendant from interfering with the natural flow of the waters of Silver Creek, a stream rising in the Cascade Mountains, flowing westerly, and emptying into Pudding River; and though it is narrow, and the flow of its waters impeded by many bowlders, yet in the rainy season it affords a sufficient volume of water to float saw logs to market, which cannot usually be done in the dry season. The plaintiff, a private corporation, is a riparian proprietor on the creek, the waters of which it dams and uses in propelling machinery to generate electricity which it furnishes to customers for lighting. In May, 1902, the defendant commenced the erection of

a sawmill on said stream at Silverton, and, having placed a
large quantity of saw logs in the creek, built a dam across it
about six miles above plaintiff's light station, whereby the
water could be flooded back about three fourths of a mile, rais-
ing a head of twenty-six feet, and by suddenly opening a gate
in the dam the water could be drawn down to ten feet, thereby
carrying the saw logs toward the mill.   This dam having been
completed July 23, 1902, the gate was shut and remained closed
two days; thus preventing the flow of water to plaintiff's sta-
tion, in consequence of which its dynamos could not be ope-
rated, and its customers were deprived of electric light.   The
complaint, having alleged the facts, in substance, as hereinbe-
fore stated, further avers that defendant threatened to con-
tinue to raise his dam until it was seventy-five feet high, and
so to operate it; that a sudden discharge of the water would
destroy plaintiff's property and menace the lives of its em-
ployes; that it had no speedy or adequate remedy at law, and,
to prevent a multiplicity of actions, instituted this suit.   The
prayer for relief is that the defendant be perpetually enjoined
from erecting his dam to such a height as may appear danger-
ous to plaintiff's property, and that he be restrained from peri-
odically impeding the flow of water in said stream so as to
deprive the plaintiff of the use and enjoyment thereof.   The
answer denies the material allegations of the complaint, and
avers that defendant owns 1,400 acres of valuable timber land,
through which Silver Creek flows, and that, by means of dams
provided with sluiceways, water can be raised to a sufficient
·height at all times, except during one or two months in the
summer, so that when suddenly liberated it flushes the creek,
carrying the logs to market, and that such use of the water is
necessary and a reasonable exercise of the defendant's right as
a riparian proprietor.   The reply having denied the material
allegations of the answer, a trial was had, resulting in a decree
dismissing the suit, and plaintiff appeals.         AFFIRMED.

For appellant there was a brief over the names of *John K.
Kollock, Coovert & Stapleton,* and *Carson & Adams,* with an

oral argument by *Mr. Elmer E. Coovert* and *Mr. Loring K. Adams.*

For respondent there was a brief over the names of *L. J. Adams* and *George G. Bingham,* with an oral argument by *Mr. Bingham.*

Mr. Chief Justice Moore, after stating the facts, delivered the opinion of the court.

It is contended by plaintiff's counsel that Silver Creek is navigable for logs only in the winter, and that defendant has no right in the dry season to retard the natural flow of water to facilitate the transportation of his logs, when by so doing injury results to their client, and hence the court erred in dismissing the suit. It is maintained by defendant's counsel, however, that plaintiff has a plain, adequate, and complete remedy at law for the recovery of damages for the injury sustained, and hence the extraordinary power of a court of equity cannot be invoked for his relief, for which reason no error was committed as alleged.

1. Though in this state a judge may preside over a court administering both laws and equity, these forums are separate, and the latter will not assume jurisdiction of the subject-matter where there is a plain, adequate, and complete remedy to be had in the former: B. & C. Comp. § 390; *Willis* v. *Crawford,* 38 Or. 522 (63 Pac. 985, 64 Pac. 866).

2. Mr. Justice Bean, in *Love* v. *Morrill,* 19 Or. 545 (24 Pac. 916), in speaking of the exercise of equitable jurisdiction over the subject-matter, says: "When the facts necessary to give the court jurisdiction are stated in the complaint and are denied by the answer, the question of jurisdiction becomes one of fact, to be determined on the hearing, and is not waived; and where, during the progress of the trial, want of jurisdiction appears, it is the duty of the court to dismiss the bill."

3. The complaint having alleged that the defendant threatened to continue the erection of his dam until it was seventy-five feet high, and so to operate it that a sudden discharge of the water would destroy plaintiff's property and menace the

lives of its employes, if this averment had been established a court of equity would have retained jurisdiction, because the danger reasonably to be apprehended involved the destruction of plaintiff's estate; thus constituting an injury that could not well be compensated in damages: *Smith* v. *Gardner,* 12 Or. 221 (6 Pac. 771, 53 Am. Rep. 342); *Mendenhall* v. *Harrisburg Water Co.* 27 Or. 38 (39 Pac. 399). The testimony shows that the defendant built his dam as high as he intended, and that the water, when suddenly liberated therefrom by opening the gate, caused no injury to plaintiff's property. The only injury alleged to have been threatened by the defendant was the raising of his dam to the height of seventy-five feet, and the disastrous consequences that might result to plaintiff's property by suddenly liberating such a volume of water; but, as this averment is not established by the testimony, the pleadings and evidence must be further examined to see if there be such an infringement of plaintiff's right as to entitle it to equitable interference.

4. It is also alleged in the complaint, in effect, that, unless the defendant is enjoined, he will continue to impede the flow of water in the creek, except at short intervals when floating logs, so that plaintiff will be prevented from operating its dynamos and from furnishing electric light to its customers, to its irreparable damage. The answer, after denying this averment, alleges, in substance, that saw logs can only be floated in Silver Creek in the natural stages of water during the winter months, but, by means of dams provided with proper sluiceways, water can be raised at all times, except during one or two months in the summer, to a sufficient height, so that when suddenly liberated it carries the logs to market. The testimony shows that between the flood dam spoken of and the plaintiff's light station three small streams flow into Silver Creek, supplying about one third of its volume at that point, and that the flood dam leaked so that about one third of the natural flow of the creek escaped therefrom; and defendant estimated that, notwithstanding the gate of his dam was closed in July, two thirds of the water usually flowing in said creek at that

season reached plaintiff's light station. The gate of the flood dam was closed Thursday evening, July 24, 1902, the effect of which was to deprive plaintiff of the use of the water to operate its dynamos that night and the next; but on Saturday, the 26th of that month—this suit having been instituted in the mean time—a temporary injunction was issued and placed in the hands of the sheriff for service. The plaintiff's secretary, having accompanied the sheriff, met the defendant on that day, and, informing him of the purpose of their visit, requested him to open his gate; but, he having expressed a desire to consult with his attorney about the matter, the secretary said to him, "If you will go and open the gate, we will stop right away." The defendant, accepting this proposition, acceded to the request, and immediately opened the gate of his dam. L. J. Adams, one of the defendant's attorneys, testifies that, on the evening the injunction was served, plaintiff's secretary, in the presence of himself and others at Silverton, stated to the defendant that, if he would release the water, they would immediately withdraw the suit and pay their part of the costs, and that the defendant thereupon opened the gate of his dam. The temporary injunction having been dissolved, the defendant, in answer to an inquiry as to whether he had thereafter attempted to obstruct the flow of water by his dam, testified that it was of no use—because of the scarcity of water in the creek it would have all leaked out. We think a fair consideration of the testimony leads to the conclusion that defendant never intended to deprive the plaintiff of the use of sufficient water to operate its machinery; that he must have thought the small streams flowing into Silver Creek below his dam, together with the leakage therefrom, would supply plaintiff's needs, but, having discovered that his interruption of the flow of the water was injuring plaintiff, he, in response to its secretary's request, and with his assurance that the suit would be discontinued, opened his dam; and that he did not intend to use the water, except when there was a sufficient quantity to supply plaintiff's demand.

The liberation of the water was accomplished by the tempo-

rary injunction, and, as plaintiff had an adequate remedy at law for the recovery of the damage it sustained, and there being no apparent probability that a recurrence of the injury will result, no error was committed in dismissing the suit, and hence the decree is affirmed.                                     AFFIRMED.


Decided 15 April, 1903.