GARTH LUMBER & SHINGLE CO. *v.* JOHNSON.

1. CONSTITUTIONAL LAW — VESTED RIGHTS — LOGGING RIGHTS — NAVIGABLE STREAMS—RIGHTS OF RIPARIAN PROPRIETORS.

Act No. 189, Pub. Acts 1905, which attempts to confer upon persons engaged in running and booming logs in the streams of the Upper Peninsula the right to enter upon the lands of riparian proprietors without any provision for compensation, is unconstitutional.

2. INJUNCTION—TRESPASS—PROPRIETY.

Though an injunction to restrain a threatened trespass is sometimes refused where the remedy at law is adequate and the damage likely to arise from the trespass trivial as compared with the interests to be affected by the injunction, the writ will not issue to protect a confessed trespasser in his occupancy of his neighbor's premises upon the ground that his interests are large and his neighbor's small.

Appeal from Delta; Stone, J. Submitted November 15, 1907. (Docket No. 184.) Decided February 15, 1908.

Bill by the Garth Lumber & Shingle Company and others to restrain Ole Johnson and others from interfering with complainants' sorting logs and other forest products in a navigable stream. From an order granting a temporary injunction, defendants appeal. Reversed, and bill dismissed without prejudice.

*F. D. Mead*, for complainants.

*A. H. Ryall*, for defendants.

OSTRANDER, J. Defendants appealed from an order granting an injunction. 150 Mich. 73. They were restrained—

"From in any manner interfering with or preventing the booming, sorting and removal of the logs, ties, poles, posts and other forest products belonging to the said com-

plainants, now lying at or near the mouth of White Fish river, in Delta county, Michigan, and from in any manner interfering with any booms temporarily attached to the shore of any of the parcels of land belonging to said defendants, and from interfering with the men in the employ of the said complainants, or any of them, in walking along the shores of said White Fish river while necessarily engaged in the work of booming, sorting and removing said logs, ties, poles, posts and other forest products, as above described, until the further order of this court."

We shall treat the bill as admitting that complainants were making such use of the stream, and of the banks thereof, as the injunction, in terms, protects. That is, they were booming and sorting forest products in the stream upon the defendants' lands, had and maintained booms in the stream which were attached to defendants' lands and their men went upon and walked along the shores of the river, on the lands of defendants, in the work of sorting logs and in removing such as were lodged or stranded. We assume, also, that the White Fish river is, where it flows over defendants' lands, in sections 21 and 28, town 41 north, of range 21 west, navigable only for floating forest products. The right asserted by complainants, the exercise of which they contend should be protected by injunction (the bill asks for no other relief), is bottomed, in the argument, upon three distinct grounds.

*First*, upon the statute, Act No. 189, Pub. Acts 1905, entitled:

"An act to regulate and define the rights of persons in running, rafting and booming of logs, timber, ties, posts or poles in the streams and rivers of the Upper Peninsula, in the State of Michigan."

This act has two sections which read:

" SECTION 1. It shall be lawful for any person or persons having logs, timber, ties, posts or poles in any stream in the Upper Peninsula navigable for such logs, timber, ties, posts or poles, to temporarily boom and assort such

logs, timber, ties, posts or poles in said stream, and along the shores, and at the mouth thereof, and to secure the booms by means of piles driven in the stream, or by chains, ropes, timbers or traverse poles made fast at points along the shore: *Provided,* That the driving and maintaining of said piles or holding of said logs, timber, ties, posts or poles aforesaid shall not interfere with the use of said stream by others for the purpose of floating similar products.

"Sec. 2. *Provided,* That this act shall not apply to any rivers or waters now having organized boom companies doing business under charter or to Anna river in Alger county."

It is charged in the bill that there is no organized boom company doing business under charter on the White Fish river.

*Second,* upon a prescriptive right to do the work they were doing in the manner in which they were doing it. It is charged in the bill that the stream has been used for floating logs for 50 years, that two of complainants have had in said river, for 10 years, forest products to be floated down it, sorted at its mouth and towed to the mills, that the other complainant has for two years been engaged in the same business, having purchased from another mills, lands, booms and sorting works which had been established at the mouth of the stream and used for sorting logs which came down the stream, for 30 years or more. That in March, 1907, complainants entered into an agreement by which—

"After the logs had been driven to a solid jam down the said White Fish river at or near the State Road bridge, which crosses the said White Fish river about one mile from its mouth, they should sort said logs, use the booms which had been placed in said river and which had been used for many years in sorting logs and other forest products, now owned by the Garth Lumber & Shingle Co., and also adding such additional booms as might be necessary for said purpose, and under this arrangement the parties contributed to the cost of this sorting proportionately to the amount of timber each had in said river."

*Third,* upon the common law—that what they are pro-

tected by the injunction in doing is incident merely to the navigation of the stream.

1. Assuming that the statute which is relied upon attempts to confer a right not otherwise existing, it is plainly invalid. It does not, as its title would indicate, merely regulate and define the rights of persons in running and booming logs. It in terms makes it lawful for individuals charged with no public or quasi public duties in the premises to temporarily boom and assort logs along the shores, and for that purpose to secure booms at points along the shore. As applied to this case, it gives a right of entry upon the land of others, the effect of which is dispossession of the owners and interference with their dominion over property; this without any provision for compensation. The principle involved is not different from that employed in *Lorman* v. *Benson*, 8 Mich. 18; *Grand Rapids Booming Co.* v. *Jarvis*, 30 Mich. 308; *White River Log & Booming Co.* v. *Nelson*, 45 Mich. 578. See, also, *Ball* v. *Herbert*, 3 Term Rep. 253; *Cohn* v. *Boom Co.*, 47 Wis. 314; *Perry* v. *Wilson*, 7 Mass. 393. It is true that in his brief counsel for appellants states that—" in so far as they had attached booms to the shore and were in possession of them, and in so far as the injunction restrained defendants from interfering with them while in complainants' possession, no appeal has been made;" but counsel does, necessarily, because of the apparent claims of counsel for complainants, contend that *no* right to possess or interfere with the defendants' lands is supported by this statute. In this, we agree with counsel for appellants.

2. The bill does not charge a prescriptive right — an easement — in the lands of defendants. Whether the condition of things described in the bill ever before existed does not appear.

3. The question of the right of owners of logs floated at high water to reclaim and set afloat such of them as are left by the subsidence of the water, or such as are forced, in prudently conducting the drive, upon the banks

of a river, is not presented by this record. See 2 Comp. Laws, § 5098; *Gratwick, etc., Lumber Co.* v. *Lewis,* 66 Mich. 533; *Bradley* v. *Boom Co.,* 82 Mich. 9; *Bauman* v. *Boom Co.,* 66 Mich. 544. And, upon the subject, see, generally, *Hooper* v. *Hobson,* 57 Me. 273; *Carter* v. *Thurston,* 58 N. H. 104; *Watkins* v. *Dorris,* 24 Wash. 636, 646 (54 L. R. A. 199). What complainants are doing is not a necessary incident to such navigation as this stream affords. It is, apparently, a calculated invasion of private property. The bill charges that "said defendants threaten to interfere with the sorting of said logs by your orators, and threaten to use force to prevent your orators from walking along said shore, as above set forth, or from booming said logs along said shore and assorting them temporarily," offers to pay any damages accruing to defendants "from such use of said shores in the assorting of said logs," which complainants are legally liable to pay. No previous offer to compensate defendants is alleged, no attempt to agree with them for compensation. The statute right to use defendants' lands being denied, the position of complainants is, in effect, that defendants are not, in fact, damaged by what complainants have done and are doing; if they are, they must submit to such use of their property as serves the necessities or convenience of complainants' operations and prove their damages after such use has ceased. It is urged that the value of the forest products in the stream is $100,000, that one-fifth is stranded upon the shores and that the value of the land desired to be used is small, the land uncultivated, and the resulting injury to defendants inconsequential. The court has upon occasion refused the writ of injunction to restrain a threatened trespass where the remedy at law was adequate, the opposed interests to be affected by the injunction of large, proportional, consequence, and other and independent circumstances considered negatived the right of complainant to equitable relief. *Howard* v. *Bellows,* 148 Mich. 410. So the writ

might have been refused to the defendants in the case here presented. It does not follow that the writ will issue to protect a confessed trespasser in his occupancy and use of his neighbor's premises upon the ground that his interests and operations are large and the landowner's damages small. Purely legal rights are involved in the present controversy.

Because no ground for equitable interference is stated in the bill of complaint, it will be dismissed, with costs of both courts, without prejudice to the rights of any of the parties to institute suits at law.

MONTGOMERY, HOOKER, CARPENTER, and MCALVAY, JJ., concurred.