Points Decided.

(December 10, 1910.)

# PINK C. MASHBURN, Respondent, v. ST. JOE IMPROVEMENT CO., Appellant.

[113 Pac. 92.]

NAVIGABLE STREAMS—IMPROVEMENT OF STREAMS—FRANCHISE TO IM-
PROVE STREAMS AND COLLECT TOLLS—ACT OF FEBRUARY 28, 1899—
RIGHTS OF RIPARIAN PROPRIETORS—DAMAGES CAUSED BY FLOODING
LANDS—ESTOPPEL.

(Syllabus by the court.)

·1. The act of the legislature of February 28, 1899 (1899 Sess. Laws, p. 332), authorizing the state board of land commissioners to grant a license and franchise to a company or corporation to clear, deepen, straighten, and improve the channel of a stream and collect tolls for the floating of logs and lumber thereon, if not constitutional, affords no protection to the grantee of the license and franchise; and if constitutional, it cannot be construed to authorize the grantee of the franchise and license to enter upon the lands of the riparian proprietor or to interfere with the banks of the stream or the growing timber along the stream, or to commit any injury against or trespass upon the lands of such proprietor.

2. Every stream of water within this state which in its natural state is capable of floating logs or other commercial and floatable commodities for any practical period of time is to such extent and for such time a navigable stream, and the bed thereof is for such purposes subject to the regulation and control of the state.

3. All navigable streams within this state are highways to the extent and for the purpose of their navigability, and the state has a right to enter upon and improve the beds of such streams or highways.

4. In improving and keeping open navigable streams of this state, neither the state nor its licensee has any right to trespass upon the lands of the riparian proprietors, cut timber therefrom, cut away the banks, or impair the littoral rights of such proprietors without first compensating the proprietor in the manner provided by law.

5. A riparian proprietor who makes no protest or objections to the improvement of a stream by deepening and widening and straightening the same, and cutting away timber along the banks thereof, by a company that represents to him that it is acting under a license and franchise from the state, is not estopped by his in-

action or quiescence from thereafter maintaining an action against the company for damages caused in the overflowing of his land and depositing logs and timber and debris thereon, which is directly caused by the cutting away of the timber and the weakening of the banks and the erection of splash dams above his lands, whereby the volume of water in the stream is greatly augmented and a flooding is caused.

6.   No one is liable for damages caused by the forces of nature, but he who wrongfully augments and accelerates those forces is liable for the damages caused by his wrongful acts.

APPEAL from the District Court of the Eighth Judicial District, in and for the County of Kootenai.   Hon. Robert N. Dunn, Judge.

Action by plaintiff for damages.   Judgment for the plaintiff and defendant appeals.   *Affirmed.*

Gray & Knight, for Appellant.

The development of the different timber-producing states has occasioned a great deal of legislation similar to the act of 1899, which has been found desirable and advantageous in making available the great natural wealth of the forests. These legislative acts have been universally held to be constitutional and valid.   (1 Farnham on Waters, p. 154.)

The right of the legislature to provide for the improvement of the navigable streams and for that purpose to grant franchises to corporations or individuals has frequently been recognized and sustained.   (*Cohn v. Wausau Boom Co.,* 47 Wis. 314, 2 N. W. 546; *Osborne v. Knife Falls Co.,* 32 Minn. 412, 50 Am. Rep. 590, 21 N. W. 704; 1 Farnham on Waters, sec. 28; *St. Joseph County Commrs. v. Pidge,* 5 Ind. 13; *Toothaker v. Winslow,* 61 Me. 123; *Thompson v. Androscoggin River Imp. Co.,* 58 N. H. 108; *Black River Imp. Co. v. La Crosse Booming & Tr. Co.,* 54 Wis. 659, 41 Am. Rep. 66, 11 N. W. 443.)

Any stream of sufficient capacity to float to market the products of the country through which the stream extends, so as to be useful to the proprietors along the banks, is navigable, and a right of way subsists in the public.   (*Gaston v.*

*Mace*, 33 W. Va. 14, 25 Am. St. 848, 10 S. E. 60, 5 L. R. A. 392; *Farmers' Co-op. Mfg. Co. v. Albemarle & R. R. Co.*, 117 N. C. 579, 53 Am. St. 606, 23 S. E. 43, 29 L. R. A. 700; *Osborne v. Nelson Lumber Co.*, 33 Minn. 285, 22 N. W. 540; Gould, Waters, secs. 248, 248a, 249; Angell, Tide Waters, p. 92 et seq.)

Any stream which is capable, in its natural condition, of being commonly and generally used for floating sawlogs at periods of high water, is navigable or floatable for the transportation of the timber along its banks. (*Brown v. Chadbourne*, 31 Me. 9, 50 Am. Dec. 641; *Moore v. Sanborne*, 2 Mich. 520, 59 Am. Dec. 209; *Weise v. Smith*, 3 Or. 445, 8 Am. Rep. 621; *Shaw v. Oswego Iron Co.*, 10 Or. 371, 45 Am. Rep. 146; *Hallock v. Suitor*, 37 Or. 9, 60 Pac. 384.)

Dams, dikes, embankments, and the like may be constructed in or along floatable streams to facilitate their use. (*Union Power Co. v. Lichty*, 42 Or. 563, 71 Pac. 1044.)

The appellant was in no way negligent in making improvements or in maintaining or operating the same, nor in floating logs down the streams, and is not liable for damages. (*Kamm v. Normand*, 50 Or. 9, 126 Am. St. 698, 91 Pac. 448, 11 L. R. A., N. S., 290, and cases cited.)

The state authorized the defendant company to make certain improvements for the purpose of facilitating the floatation of logs. The improvements were made, and the evidence tends to show that some small consequential damages resulted to the riparian owners. The defendant is not liable, for it was acting under and by virtue of an authority vested in it by the act of the legislature. (*Brooks v. Cedar Brook etc. Co.*, 82 Me. 17, 17 Am. St. 459, 19 Atl. 87, 7 L. R. A. 460; *Hollister v. Union Co.*, 9 Conn. 436, 25 Am. Dec. 36; *Holyoke Water-Power Co. v. Connecticut River Co.*, 20 Fed. 71; *Henry v. Vermont Cent. R. Co.*, 30 Vt. 638, 73 Am. Dec. 329.)

The erosion of private lands, resulting consequentially from authorized public improvements, is "*damnum absque injuria*." (*Alexander v. Milwaukee*, 16 Wis. 247 (264); *Green v. Swift*, 47 Cal. 536; *Monongahela Nav. Co. v. Coon*, 6 Pa. 383, 47 Am. Dec. 474; *Northern Transp. Co. v. Chicago*, 99 U. S. 635,

25 L. ed. 336; *Field v. Apple River Log Driving Co.,* 67 Wis. 569, 31 N. W. 17; *Mitchell v. Lea Lumber Co.,* 43 Wash. 195, 86 Pac. 405, 9 L. R. A., N. S., 900, 10 Ann. Cas. 231; *Hot Springs Lumber & Mfg. Co. v. Revercomb,* 106 Va. 176, 55 S. E. 580, 9 L. R. A., N. S., 894.)

Where a riparian owner's property was injured by defendant's floating logs down the stream, proof of defendant's negligence was essential to a recovery. The gist of such action is negligence. (*Hunter v. Grande Ronde Lumber Co.,* 39 Or. 448, 65 Pac. 598; *Hopkins v. Commercial Co.,* 13 Mont. 223. 40 Am. St. 438, 33 Pac. 817; *Witheral v. Booming Co.,* 68 Mich. 48, 13 Am. St. 325, 35 N. W. 758; *Field v. Log Driving Co.,* 67 Wis. 569, 31 N. W. 17; Cooley, Const. Lim., p. 542.)

"A company which has constructed works in a river in a proper manner, and by authority of the legislature, is not liable for damages for flowage of land caused by an extraordinary freshet such as the company could not reasonably have anticipated and provided against, even though such damages may have been to some extent occasioned by the presence of such works in the river." (*Borchardt v. Wausau Boom Co.,* 54 Wis. 107, 41 Am. Rep. 12, 11 N. W. 440; *Alexander v. City of Milwaukee,* 16 Wis. 247 (264); *Lamb v. Licey,* 16 Ida. 664, 102 Pac. 378.)

R. E. McFarland and McBee & La Veine, for Respondent.

The courts look with contempt and disfavor on any attempt at forcible seizure and appropriation of another's property without compensation being first made therefor. (*La Veine v. Stack-Gibbs Lbr. Co.,* 17 Ida. 51, 51 Am. St. 253, 104 Pac. 666.)

"The backing of water so as to overflow the lands of an individual, or any other superinduced addition of water, earth, sand or other material or artificial structure placed on land, if done under statutes authorizing it for the public benefit, is such a taking as by the constitutional provisions demands compensation." (*Pumpelly v. Green Bay Co.,* 13 Wall. (U. S.) 166, 20 L. ed. 557; *Chicago v. Taylor,* 125 U. S.

161, 8 Sup. Ct. 820, 31 L. ed. 638; *U. S. v. Lynah,* 188 U. S. 445, 23 Sup. Ct. 349, 47 L. ed. 530; *Colvin & Rinard v. Lyons,* 15 Ida. 180, 96 Pac. 572.)

Anyone who by wrongful acts augments, defeats or accelerates nature's forces in such a manner as to injure another is liable in damages therefor. (*Axtell v. N. P. Ry. Co.,* 9 Ida. 392, 74 Pac. 1075.)

It is immaterial whether or not the respondent protested against the use of his land. (*U. S. v. Lynah, supra.*)

The fact that all the improvements were made according to specifications filed with the state board of commissioners and in accordance with the terms of the franchise does not relieve appellant from liability for the damages complained of. (*Haines v. Welch,* 14 Or. 319, 12 Pac. 502; *Brewster v. Rogers Co.,* 169 N. Y. 73, 62 N. E. 164, 58 L. R. A. 495; *McKenzie v. Boom Co.,* 29 Minn. 288, 13 N. W. 123; *Anderson v. Thunder Bay Co.,* 61 Mich. 489, 28 N. W. 518; *Hackstack v. Keshena Imp. Co.,* 66 Wis. 439, 29 N. W. 240; *Hueston v. Miss. R. Boom Co.,* 76 Minn. 251, 79 N. W. 92; *Bowers v. Miss. R. Boom Co.,* 78 Minn. 398, 78 Am. St. 395, 81 N. W. 208.)

Assignments of error in brief relating to different questions should be separately stated and each accompanied with appropriate propositions and statements. (*People v. Page,* 1 Ida. 102; *Houston & T. C. Ry. Co. v. Guisar* (Tex. Civ. App.), 27 S. W. 1045; *Powers v. Kindt,* 13 Kan. 74; *Whyte v. Rosencrantz,* 123 Cal. 634, 69 Am. St. 90, 56 Pac. 436; *People v. Woon Tuck Wo,* 120 Cal. 294, 52 Pac. 833.)

AILSHIE, J.—This action was instituted by the plaintiff, who is respondent here, for the recovery of damages sustained to his lands and the lands of his assignors. A verdict was returned, and judgment thereupon entered in favor of the plaintiff in the sum of $3,750. Defendant moved for a new trial and thereupon appealed from the judgment and an order denying its motion.

Damages were asked for injury committed by the defendant upon the lands of the plaintiff and his assignors in cutting

away the banks of the St. Maries river and its tributary, Santa creek, which flow through these lands, and in removing the timber and brush and other growth from along the banks of the stream which protected the banks from being washed down by the flowing waters, and in making certain changes in the stream and straightening and widening the stream, and also for damages caused by reason of the defendant erecting certain splash-dams on Santa creek above the premises of the plaintiff, collecting the waters and then turning them loose in large volume for the floating of logs, and thus causing large deposits of sand to be left on the meadows of the plaintiff and large quantities of bark and logs and timber to be deposited over the plaintiff's land. It appears that prior to entering upon this work the defendant procured from the state board of land commissioners a permit and license under act of February 28, 1899 (Sess. Laws 1899, p. 332), to clear, deepen and straighten the channels of these two streams and to receive and collect tolls and also to construct splash-dams and to keep the streams open for the floating of rafts, timber, logs, lumber, piling, ties, etc. Acting under this license, it is claimed by the appellant that it entered upon these streams about March, 1903, and proceeded to clean out and deepen and straighten and improve the channels of the streams so that it might float logs down the streams for commercial purposes. It appears that there was a large body of commercial timber contiguous to these streams above the lands of the respondent amounting to upward of two billion feet. It also appears that the company set men to work on these streams and caused them to cut and blast out trees and shrubbery growing along the banks of the stream, and to also blast out rock, and erect breakwaters and piers at certain places for the purpose of confining the stream to a narrower channel, and at other places changed the stream entirely so as to straighten it; and that they also erected a couple of large dams, commonly called splash-dams, some miles above respondent's premises and on the waters of Santa and Charley creeks. At such time in the spring as the natural flow of the streams was not suffi-

cient to furnish a good head of water for the floating of logs, the company would cause these splash-dams to be filled and then turn them loose, creating a large head or volume of water which would drive the logs with great force down the stream, and this often resulted in throwing many of the logs and a great deal of debris and timber on to respondent's meadow-lands and the low lands which he used for raising potatoes and vegetables; and this was kept up apparently at as frequent intervals each spring as the company could collect sufficient heads of water to float the logs till late in the spring, running at times into May and June. This, the respondent says, prevented his planting and taking care of his crops, and deprived him of his hay crop; and the plaintiff also testified that the constant driving of logs down the streams under heavy heads of water tended to beat down and wear away the banks of the streams, and that it completely washed away something like twenty-six acres of his meadow-land.

As to some of these matters there is but little or no conflict in the evidence, while as to others there is a sharp conflict. For example, it is contended by the appellant and testified to by some of its witnesses that the damage and evil effects resulting from the improvement of the streams and the use of these splash-dams and the floating of logs down the stream were not materially greater after appellant entered upon the work and improved the streams than before, and that it had always happened in the springtime, when the waters were high, that the lands of the respondent and his assignors were flooded and overflowed and that more or less bark, logs and debris were deposited on his land. The respondent, on the other hand, testifies that there is a most material and substantial increase in the damage that he has sustained, both from overflow and the deposit of sand and logs and debris, and particularly from the washing away of his land by reason of the impairment of the banks of the streams flowing through his lands and flooding from the splash-dams.

The appellant relies for reversal of the judgment on two principal propositions: First, that it entered upon and im-

proved the stream under plans and specifications furnished by the state board of land commissioners, acting under the authority of the act of February 28, 1899, and that any damage which the respondent and his assignors may have suffered is merely consequential damage which would necessarily result to any riparian proprietor through whose land the stream thus improved might flow. Second, the appellant contends that the respondent and his assignors were present, and saw and knew of the changes and improvements being made in the stream and made no objections or protests thereto, and that they are therefore estopped from now complaining or collecting damages from the ordinary and consequential results of those changes and improvements.

The respondent, on the other hand, contends that the act of the legislature under which appellants secured their license and franchise is unconstitutional, in that it authorizes the taking of private property without compensation, and, second, that the acts of the respondent do not constitute an estoppel. Turning our attention, first, to the act of the legislature under which appellant procured its franchise, the inquiry at once arises as to whether this act attempted to do more than to authorize the deepening and improvement of the bed of the stream, and if it was intended by the act to authorize an improvement company in any way to enter upon the lands of the riparian proprietor or to interfere with the banks of the stream and the growing timber. It is apparent at once that if the act attempts to authorize the company securing the franchise to enter upon the lands of riparian proprietors or to interfere with their littoral rights or to cut or remove timber, then the act would be unconstitutional and a plain violation of sec. 14, art. 1, of the state constitution, which forbids the taking of private property without first paying a just compensation therefor. (See *Garth Lumber & Shingle Co. v. Johnson,* 151 Mich. 205, 123 Am. St. 262, 115 N. W. 52; *De Camp v. Thompson,* 16 App. Div. 528, 44 N. Y. Supp. 1014; *Smith v. Atkins,* 110 Ky. 119, 96 Am. St. 424, 60 S. W. 930, 53 L. R. A. 790.) As we view this case, it is not necessary for us to determine whether or not the act of February

28, 1899, under which appellant secured its franchise is consti-
tutional. If it is not constitutional, then it can afford the
appellant no protection in this case; if it is constitutional,
then it does not authorize the appellant to commit the wrongs
and injuries complained of in this case. In order to sustain
the statute as above stated, it would be necessary to hold that
it does not attempt to authorize the entry upon the lands
of riparian proprietors or the commission of any trespass
thereon or any injury thereto. We have no doubt of the right
of the state to enter upon navigable streams, whether navigable
for boats and light craft or only for the floating of logs and
timber, and to deepen and improve the bed of the stream.
The damages that might indirectly flow from a reasonable
exercise of this right would have to be borne by the pro-
prietors as *damnum absque injuria*. All navigable streams
are highways, and the state has a right to improve the bed
of the highway. To that extent, therefore, there can be no
question of the power of the state to occupy and improve the
stream. (*Smith v. Atkins*, 110 Ky. 119; 96 Am. St. 424, 60
S. W. 930, 52 L. R. A. 790; *Monroe Mill. Co. v. Menzel*, 35
Wash. 487, 102 Am. St. 905, 77 Pac. 813, 70 L. R. A. 272;
*Pickens v. Coal River Boom Co.*, 51 W. Va. 445, 90 Am. St.
819, 41 S. E. 400.) The fact that it was necessary to
do the things complained of in order to utilize the timber
above respondent's lands affords no excuse or justification
in law for invading respondent's rights, committing trespass,
and flooding his lands.

In *La Veine v. Stack-Gibbs Lumber Co.*, 17 Ida. 51, 134
Am. St. 253, 104 Pac. 666, this court had under consideration
the act of a defendant in entering upon the lands of a
riparian proprietor and building a dam for the purpose of
impounding the waters and flooding the stream. In passing
upon that question, the court, among other things, said:

"The fact that it would be more convenient and cheaper
for defendants to float their logs down this stream over
plaintiff's premises than to remove them in any other way
affords no reason whatever for their trespassing upon plain-
tiff's premises and building dams thereon and maintaining

guards to protect the same and flooding his premises.   There can be no question but that they have a right to float their logs down the stream when it is navigable.   (*Powell v. Springston Lbr. Co.,* 12 Ida. 723, 88 Pac. 97; *Johnson v. Johnson,* 14 Ida. 561, 95 Pac. 499, 24 L. R. A., N. S., 1240.)   But this right gives them no license to trespass upon plaintiff's lands and erect structures thereon and to go and come through and over his premises without let or hindrance. They should be required to respect the private rights of property just the same as anyone else, and the fact that they owned lumber about Lake Fernan or millions of feet of logs floating in the lake, furnishes no reason, pretext or excuse whatever for their turning trespassers and wrongdoers themselves and riding over the rights of others.''

*Kamm v. Normand,* 50 Or. 9, 126 Am. St. 698, 91 Pac. 448, 11 L. R. A., N. S., 290, is a case somewhat similar in facts and very much in point on the questions of law involved in the case under consideration.   After considering what constitutes a public highway for floatage or a navigable stream for the floating of logs and lumber, Mr. Chief Justice Bean, speaking for the court, said:

''But a stream which is not such a highway cannot be made one by the use of dams or other artificial means, without first acquiring the rights of riparian proprietors.   (1 Farnham on Waters, sec. 139.)   Nor can a stream, navigable in its natural condition at certain stages of the water, be made so at other times by artificial means, such as flooding and the like.   No one has a right to store water, and then suddenly release the accumulation, and thus increase the natural volume of the stream, and overflow, injure or wash the adjoining banks, or otherwise interfere with the rights of riparian owners.   The riparian proprietor is entitled to the enjoyment of the natural flow of the stream with no burden or hindrance imposed by artificial means. . . . . Dams, dikes, embankments and the like may be constructed in or along floatable streams to facilitate their use (*Union Power Co. v. Lichty,* 42 Or. 563, 71 Pac. 1044), but not to the extent of injuring the riparian proprietors by retarding the flow of

the water or sending it down in increased volumes to his injury or at times when the stream would not otherwise be navigable. And this rule is not changed by the fact that a stream cannot be successfully used for logging purposes without such artificial aids to navigation on the ground of necessity.''

For an exhaustive review of this and kindred questions, see note to the foregoing case commencing at page 710 of vol. 126, Am. St. Reports. It must be borne in mind that what is here said has no reference to water rights acquired by appropriation or the right to flow water through natural channels under appropriation of waters to a beneficial use.

It has been repeatedly held in this state that ''navigable streams are public highways over which every citizen has a right to carry commerce, whether it be by boats or the simple floating of logs,'' and that any stream which, in its natural state, will float logs or any other commercial and floatable commodity is for the time and to that extent a navigable stream. (*Powell v. Springston Lbr. Co.,* 12 Ida. 723, 88 Pac. 97; *Johnson v. Johnson,* 14 Ida. 561, 95 Pac. 499 , 24 L. R. A., N. S., 1240; *Shepard v. Coeur d'Alene Lbr. Co.,* 16 Ida. 293, 101 Pac. 591; *La Veine v. Stack-Gibbs Lbr. Co.,* 17 Ida. 51, 134 Am. St. 253, 104 Pac. 666.) It would not be proper or lawful, however, for an individual or corporation, whether acting under a franchise from the state or not, to so increase the flow of a stream by splash-dams or otherwise as to overflow, flood and damage the lands of a riparian proprietor, nor would it be lawful for such person or corporation to, by means of dams or otherwise, so flood a stream and increase its flow at a season of the year when in its natural state it is not capable of floating logs or other articles of commerce as to overflow the banks of the stream or injure or damage the lands of another. (See *Kamm v. Normand,* 50 Or. 9, 126 Am. St. 698, 91 Pac. 448, 11 L. R. A., N. S., 290, and cases there cited.)

Some evidence was offered on behalf of appellant tending to show that the principal damage respondent suffered on account of the overflow and the deposit of logs and debris

was the result of an unusual freshet in the spring of 1908, and that the splash-dams were all open at that time and were not used for the collection of water or flooding the stream. Appellant therefore contends that the real cause of whatever damage respondent had sustained was the forces of nature and the act of God, for which it is not legally responsible. In support of this rule of law, appellant cites *Lamb v. Licey,* 16 Ida. 664, 102 Pac. 378. Respondent, however, has shown by his evidence that while he may have sustained damages on account of the freshet, he also was subject to a continuing injury and damages which were the direct result of the wrongful and unlawful acts of appellant. Respondent also contends that the acts of appellant in cutting away the timber and shrubbery along the banks of the stream and in breaking down the banks and impairing his littoral rights and building splash-dams and collecting and turning loose large volumes of water augmented the damages that he sustained from the freshet, and contends that under the rule announced in *Axtell v. Northern Pac. Ry. Co.,* 9 Ida. 392, 74 Pac. 1075, "One who by his wrongful acts augments, diverts or accelerates the forces of nature in such a manner as to injure another is liable in damages therefor." There was abundant evidence before the jury to justify them in believing that much of the damage sustained by respondent was traceable directly to the wrongful acts of appellant. They were also justified in believing that the damage caused by the freshet of which appellant furnished evidence was greatly augmented and accelerated by reason of the previous wrongful acts of appellant. The removal of the timber and growth along the banks allowed logs and debris to float out over the meadows and bottom lands to a greater extent than it could before the timber was removed.

But it is contended that the respondent is estopped from asserting this claim by reason of his action and conduct at the time the alterations, changes and improvements were being made in these streams. The acts out of which it is claimed an estoppel arises were merely acquiescence or inaction on the part of respondent rather than any affirmative

action taken by him. It is not contended that he gave his consent in any manner, and, on the other hand, he admits on the witness-stand that he did not enter any protest or objection to the changes, improvements and alterations that the company made in these streams. He says that his reason for not doing so was that they told him they had a franchise and license from the state, and that he presumed that gave them a right to come on to his premises and do the work they were doing, and that he did not at the time know any better.

A very similar question was considered in *Monroe Mill. Co. v. Menzel,* 35 Wash. 487, 102 Am. St. 905, 77 Pac. 813, 70 L. R. A. 272, by the supreme court of Washington, and the court said: "The mere fact that he made no objection to clearing the bed of the stream from obstructions, or that he may even have assisted therein, does not necessarily establish that he consented that the floatage of the stream should be conducted in any other manner than as provided by the natural flow of the water. The further fact that he may have used the water, as it was sent down the stream by the occasional opening of the dam, during a period of about two years, does not establish his acquiescence in the continued interruption of the natural flow of the water, and amounts to no more than a mere license for a temporary interruption, revocable at will. Such facts do not contain the essential elements of estoppel."

That case is a much stronger case on the facts in favor of estoppel than this, and if, under the facts as stated in the opinion, there was no estoppel in that case, there certainly is no element of estoppel in this case. But independent of any authority on the question, it is clear to us that the mere fact that respondent stood by and saw the beds of these streams deepened and widened and cleaned out did not amount to his giving his consent that they might impound the water miles above his place and turn it loose and drive down the stream with great rapidity millions of feet of lumber and flood and overflow his lands and cover them with sand, logs and debris. He had the right to assume that they

would use the stream in a lawful manner, and even though they were committing acts of trespass in entering upon his land, disturbing his littoral rights and cutting down timber, he still might have been willing to forego those things, and yet have reason to suppose that they would not commit the further acts of which he now complains in this case. (*Eastwood v. Standard M. & M. Co.*, 11 Ida. 195, 81 Pac. 382.)

Something like 125 errors have been assigned in this case, but the briefs do not refer us to the page or folio of the record in which those exceptions are to be found, nor are they argued separately or specifically in the briefs. We have discussed the leading questions which have been considered in the briefs. We have found no error that would justify a reversal of the judgment in this case. The judgment will be affirmed, and it is so ordered. Costs awarded in favor of the respondent.

Sullivan, C. J., concurs.