(December 4, 1911.)

## IDAHO NORTHERN RAILROAD CO., Respondent, v. POST FALLS LUMBER COMPANY, Appellant.

[119 Pac. 1098.]

NAVIGABLE STREAM—NAVIGABILITY DEFINED—FLOATING OF LOGS—DAM-AGES CAUSED BY FLOATING OF LOGS—BRIDGING NAVIGABLE STREAMS.

(Syllabus by the court.)

1. Any stream in this state is navigable on which logs or timber can be floated to market or the place of use, and to that extent and for that purpose is a public highway; and it is not necessary that such stream be navigable the whole year for such or any purpose. It is sufficient if during the high-water season such stream can be used for the floating of logs and timber, and the question of navi-gability for such or any useful purpose is a question of fact to be

determined in the same manner as any other question of fact is determined.

2. If a stream is in fact navigable or floatable, the question as to whether or not logs, lumber or other floatable materials may be profitably transported by means of such watercourse is a question that should be left in a large measure to the person who undertakes the enterprise, and the chief question to be determined by a court in such a case is the question of navigability in fact, while the question as to whether it can be done profitably is one that will depend largely upon the condition and circumstance of the person who undertakes the enterprise, and to him it may be both practicable and profitable while to another differently situated it might be unprofitable.

3. In the new and undeveloped condition of this state, and in view of the circumstance that large areas of the state's forest and mineral wealth have not been opened or developed, proof that a stream flowing through such territory has never before been utilized for the floating of logs or other materials should have but little or no weight in determining the fact of the navigability or floatability of such streams.

4. One who undertakes to utilize a stream for the floating of logs, lumber or other material must do so having due and proper regard for the interests and property rights of others along such stream, and must exercise care proportionate to the natural conditions of the stream, the dangers and difficulties of the undertaking and the liability of inflicting injury upon others.

5. Where a railroad company builds its grade and track along the course of a stream, crossing it from time to time and utilizing a bank of the stream for its grade, it is chargeable with notice of the navigability of such stream for the floating of logs and other articles of commerce and of the natural conditions of the country and the fact that the stream is subject to periods of high water, freshets and floods, and must so build its grade and road as not to unreasonably impede or obstruct the navigation of such stream, and in so doing it must take notice of the fact that floatable commodities are liable at times to strike the banks of the stream and cause abrasions of the bank, and must accordingly guard and protect its roadbed built along such banks.

APPEAL from the District Court of the First Judicial District for Shoshone County. Hon. W. W. Woods, Judge.

Action for damages and perpetual injunction. Judgment for the plaintiff and defendant appealed. *Reversed.*

McBee & La Veine, and Phil Averitt, for Appellant.

Respondent was bound to take notice that Eagle and Prichard creeks could be rendered navigable by the removal of a few stumps and fallen timbers before occupying the channel of said Prichard creek. (*Olson v. Merrill,* 42 Wis. 203; *Moore v. Sanborne,* 2 Mich. 520, 59 Am. Dec. 209; *Johnson v. Johnson,* 14 Ida. 561, 95 Pac. 499, 24 L. R. A., N. S., 1240.)

The test to be applied in such cases is, whether a stream is inherently and in its nature capable of being used for the purposes of commerce for the floating of vessels, boats, rafts or logs. (*Brown v. Chadbourne,* 31 Me. 9, 50 Am. Dec. 641; *Morgan v. King,* 35 N. Y. 454, 91 Am. Dec. 58; *Hooper v. Hobson,* 57 Me. 273, 99 Am. Dec. 769.)

"A stream capable of floating logs and timber to market is a navigable stream." (*Hallock v. Suitor,* 37 Or. 9, 60 Pac. 384; *La Veine v. Stack-Gibbs Lbr. Co.,* 17 Ida. 51, 134 Am. St. 253, 104 Pac. 666.)

"The fact that a floatable stream has not been used by the public but has only been used by persons following a particular occupation cannot deprive such stream of its public character." (*Moore v. Sanborne, supra.*)

"It is sufficient if it appear that business men may calculate that, with a tolerable regularity as to season the water will rise to and remain at such a height as to make it profitable as a highway for transporting logs to mills and markets lower down." (*Commrs. of Burke County v. Catawba Lumber Co.,* 116 N. C. 731, 47 Am. St. 829, 21 S. E. 941.)

The legislature must be presumed to have had all the natural growth and development of the timber industry in view when they enacted section 2798, Rev. Codes, authorizing the construction of bridges over streams in this state. (*Dugan v. Bridge Co.,* 27 Pa. 303, 67 Am. Dec. 464.)

Had respondent properly constructed its bridge and right of way and kept out of the channel of Prichard creek, its right of way would not have been destroyed. (*Edwards v. Missouri K. & E. Ry. Co.,* 97 Mo. App. 103, 71 S. W. 366.)

"In building dams or other embankments or structures into the bed of the stream, so as to impede or interfere with the flow of the stream, the party who does so acts at his peril." (*Fischer v. Davis,* 19 Ida. 493, 116 Pac. 412.)

In Idaho, the use and navigation of our streams has been sedulously guarded by both legislative action and judicial decisions. (Secs. 837 and 2798, Rev. Codes; *Powell v. Springston Lumber Co.,* 12 Ida. 723, 88 Pac. 97; *La Veine v. Stack-Gibbs Lumber Co., supra.*)

Franklin Pfirman, and W. A. Cleland, for Respondent.

While this court has been liberal in applying the rule that a stream that can be profitably utilized for floating logs is a navigable stream, yet in no case has it gone so far as to say that a stream that cannot be used without improvement is navigable. (*La Veine v. Stack-Gibbs Lbr. Co.,* 17 Ida. 51, 134 Am. St. 253, 104 Pac. 666; 1 Farnham on Waters, sec. 77, p. 365; *East Branch etc. Co. v. White etc. Lumber Co.,* 69 Mich. 207, 37 N. W. 192.)

"The navigation right does not include the right to interfere with the bed of the stream. Rocks and natural obstructions cannot be removed." (1 Farnham on Waters, sec. 29a.) This is in navigable streams; much less is there any such right in a stream which is not in fact navigable. (*Haines v. Hall,* 17 Or. 165, 20 Pac. 831, 3 L. R. A. 609.)

A stream to be navigable in this sense must be capable of such floatage as is of practical utility and benefit to the public as a highway for trade. (*Rhodes v. Otis,* 33 Ala. 578, 73 Am. Dec. 439.)

"The one who claims the stream to be navigable has the burden of proving that it is in fact susceptible of valuable use for commercial purposes in its natural state, unaided by artificial means and devices." (1 Farnham on Waters, sec. 26, citing numerous cases.)

This court has heretofore considered and adjudicated the rights of respective parties as to the use of navigable streams. (*Small v. Harrington,* 10 Ida. 499, 79 Pac. 461; *Grice v. Clearwater Timber Co., ante,* p. 70, 117 Pac. 112.)

AILSHIE, J.—This is an appeal from the judgment and order denying a motion for a new trial. The respondent, the Idaho Northern Railroad Co., is an Idaho corporation, and has constructed and is operating a line of road from a point near the junction of the north and south forks of the Coeur d'Alene river in Shoshone county up the north fork of the Coeur d'Alene river to its confluence with Prichard creek and thence up Prichard creek to the mouth of Paragon gulch. Prichard creek is a tributary of the north fork of the Coeur d'Alene river and flows through a mineral and timber section of Shoshone county. It appears that a great deal of placer mining has been done for many years along the course of Prichard creek and Eagle creek, which is a tributary to Prichard creek and flows into Prichard creek at a point near the respondent's line of track. The railroad track is built along the canyon through which Prichard creek flows and follows the stream, at some points being constructed in what was formerly the bed of the stream and at other places crossing the stream, and at still other points following along one of the banks of the stream. By reason of having built the road along the stream and at some places in the bed of the stream, it was necessary for the railroad company to cut new channels and straighten the course of the channel so as to give the water free passage and protect the railroad property. Between the mouth of Eagle creek and the mouth of Prichard creek the railroad company constructed two bridges. These bridges are constructed (according to the court's finding No. 14) "of piling arranged in rows or bents parallel to the banks of the stream at said points, the piling being about one foot in diameter and the bents 15 ft. from center to center. There are eleven bents to each bridge providing 140 ft. of clear space at each bridge for the passage of water." It seems that as a result of many years placer mining along Prichard creek the ancient channel of this stream has been in a great measure filled up with gravel and debris and that at places there is no very well defined bed or channel to the stream, the sand and gravel and debris having so filled up the depressions that when the high-water season comes the water

spreads out over a considerable space and at such time has no well-defined main channel or stream. During the greater portion of the year there is not much of a flow of water in this stream, but in the springtime during the melting of the snow and spring rains there is a large body of water flowing in this stream, and along from March to. May and June it is subject to freshets and floods. The railroad was built up this canyon in the year 1908. Along the latter part of 1909 or the early part of 1910, the appellant, the Post Falls Lumber & Mfg. Co., which is also an Idaho corporation, purchased from the government a large quantity of saw timber aggregating about two and one-half million feet, which was then standing on the Forest Reserve about a mile and a half above the confluence of Eagle creek with Prichard creek. The lumber company thereafter employed men and set them to cutting timber and banking it along Eagle creek, and when the high-water season came in March following had about one-half million feet banked along Eagle creek. Shortly preceding the rise in the stream, appellant caused some of its employees to go along Eagle creek and down into Prichard creek and cut away fallen timber and brush and blast out stumps, and such things as constituted an obstruction in the stream, but did not remove them from the stream. The men began putting the logs into the stream along the latter part of February or the first of March for the purpose of floating them down Eagle creek into Prichard creek and thence on down into the Coeur d'Alene river for the purpose of transporting them to its mill at Post Falls on the Spokane river. It seems that none of the logs arrived in Prichard creek until about the 15th of March. This is accounted for perhaps by the fact that the high-water season did not come on until the middle or latter part of March.

It seems, both from the findings made by the trial judge and the evidence as contained in the record, that the appellant did not place men along the stream when the high water came for the purpose of keeping the logs moving or preventing jams. About the 17th of March, the logs began to jam in Prichard creek a short distance below the mouth of Eagle

creek and also at a point farther down Prichard creek near the entrance to a slough which is designated as McGuire's Millrace. As the logs came down they were hurled to one side and caused the sand and gravel to collect and form a jam or obstruction in the stream and changed the current of the stream so that it was directed against the respondent's railroad track and grade, and it resulted in washing out the track and grade for a considerable distance. A similar jam was also formed at the first bridge by such logs as were not caught in the other two obstructions and appears to have closed up a number of the open spaces between the piling which supported the bridge. The respondent notified appellant and asked the appellant to furnish men and take steps to release these logs and to protect the respondent's track, grade and bridge. It appears, however, that appellant did not take any steps to relieve the situation until after this suit was instituted. Respondent commenced this action against the appellant for damages caused to its property by reason of the negligent and wrongful acts of the appellant and for an injunction restraining the appellant from further discharging logs in these streams. The case was tried to the court without a jury, and the court found in favor of the respondent and assessed its damages in the sum of $2,697.57, and issued a permanent injunction against the appellant restraining and enjoining it from placing any logs or timber in either Eagle creek or Prichard creek so as to in any manner change the natural channel thereof to the injury of the plaintiff, or to in any manner dam up or obstruct the streams, etc.

The appellant has assigned a large number of errors, but as we view the case it will only be necessary for us to consider two questions. The first question to be considered is the navigability of Prichard creek; and the second question is the respective duties of these parties with reference to each other in attempting to do business along this stream. The respondent's position is stated as follows in its brief: It contends, first, "that Prichard creek was not a navigable stream for the floating of logs"; second, "that had it been in fact a navigable stream for the floating of logs, appellant's manner of

conducting its logging operations was so negligent and careless that it caused the damage complained of by respondent''; third, ''that in either case the operations of appellant should be restrained.'' The respondent further insists that a finding in its favor on either of the foregoing issues was sufficient to justify and sustain the decree in this case. The court, however, found with the respondent on both these issues, that is, the court found, first, that the stream was not navigable for the floatage of logs and lumber, and, second, that the appellant was guilty of negligence in the manner in which it used this stream and attempted to float its logs and wrongfully and unlawfully caused the damage which respondent sustained.

Now, there is no more conflict in the evidence in this case with reference to the navigability or floatability of this stream than would ordinarily rise from the observations of different persons as they occur in the ordinary course of events and affairs of every-day life. We can safely consider this question on the theory that there is no substantial conflict in the evidence thereon. There is no contention that logs can be floated on the stream to any advantage or with any success at any time of the year except during the high-water season. The evidence is not entirely clear as to just what months are covered by the high-water season in that section of the state, but there appears to be no question but that it includes at least the months of March, April and May. We think it is perhaps safe to say that that period ordinarily extends into the month of June, if not later. It is entirely clear that during March and April there is a large volume of water flowing down Prichard creek, as indeed it appears here that it was so great that it tore out sections of respondent's railroad track and grade and did a great amount of damage in a very short period of time. There is no question or doubt about there being sufficient volume of water in the stream to float logs and lumber. The only question over which there is any controversy is as to whether logs and lumber can be profitably floated down this stream. It appears quite clearly that in order to prevent jams and the logs piling up and changing the course of the current so as to render it dangerous

and destructive to property along the stream, it is necessary to have a force of men along the creek sufficient to keep the logs in the main current and prevent them piling and jamming and collecting the gravel and sand and debris that always attends a high-water period in this stream. The question, however, as to the profits with which logs, lumber and other floatable material, may be transported down a stream which carries sufficient volume of water to actually float such materials is not one that should receive great or controlling consideration by the courts. The question as to the practicability of navigating the stream for such purposes with profit to the one who undertakes the enterprise is a question that ought to be left, in a large measure, to the judgment of the man who undertakes the enterprise where it is once admitted that the stream will float the material. One man, or a number of men, may have abundance of time at their disposal and but little money. They may be able to and feel justified in contributing a great deal of labor in getting their lumber to market by way of the floatable stream, whereas they could not for the want of capital reach the market in any other way. Another man in the same locality who has sufficient capital might more easily and more profitably reach the market by way of a railroad or other means of transportation. This might have been true in this case. Here the respondent company was operating a railroad which tapped a large timber belt. It could undoubtedly carry logs and timber to the mills and market more profitably over its railroad than it could by way of the watercourse. The appellant, on the other hand, owned a large body of timber and a sawmill, but did not own a railroad, and it evidently thought it could carry its timber to its mill more profitably by way of the watercourse than it could over the respondent's railroad. It must in all cases be first ascertained and determined that the floatage or navigation proposed is a *valuable* or a *beneficial use,* but as to whether it can be *profitably* exercised in any instance will depend largely on the circumstances and situation of the persons seeking to avail themselves of such use.

The trial court evidently considered the fact that the stream had never heretofore been used for floating of logs a strong reason for holding that the stream was non-navigable as he made a finding to that effect. This fact has been considered by some courts and rejected by others. (See *Moore v. Sanborne,* 2 Mich. 520, 59 Am. Dec. 209; *Brown v. Chadbourne,* 31 Me. 9, 50 Am. Dec. 641.) The fact that a stream has never been used for the purpose of navigation would seem to us to be an important question for consideration in an old state where it has been long settled and its various resources have been developed and exploited, but such a rule is scarcely applicable in a new state like this where there are large sections of the state that have never yet been settled, occupied or in any manner developed. There are streams flowing through large areas in this state that are heavily timbered and where there are also large mineral deposits, and yet no one has so far had any occasion to attempt the use of these streams for any commercial purpose such as the floating of logs and lumber or any other product. The fact, therefore, that such streams have never heretofore been employed for the purposes of carrying to the markets the products of the country through which they flow is no evidence that they may not be so used in the future or that they are not susceptible of such use. It is the policy of this state to encourage the employment of the watercourses for any useful and beneficial purpose, and to that end the power of eminent domain has been granted by the state for the purposes of improving streams, so that the people interested in the country through which they flow may utilize them for beneficial purposes. (*Potlatch Lumber Co. v. Peterson,* 12 Ida. 769, 118 Am. St. 233, 88 Pac. 426; *Mashburn v. St. Joe Improvement Co.,* 19 Ida. 30, 113 Pac. 92.)

We think the definition of a navigable stream given by the supreme court of Oregon in *Felger v. Robinson,* 3 Or. 455, and approved and reaffirmed in *Hallock v. Suitor,* 37 Or. 9, 60 Pac. 384, is the correct definition, and is in harmony with the general trend of the decisions in this state dealing with navigable and floatable streams. The court there said:

"We hold the law to be that any stream in this state is navigable, on whose waters logs or timbers can be floated to market, and that they are public highways for that purpose, and that it is not necessary that they be navigable the whole year for that purpose, to constitute them such. If at high water they can be used for floating timber, then they are navigable; and the question of their navigability is a question of fact, to be determined, as any other question of fact, by a jury. Any stream in which logs will go by the force of the water is navigable."

To the same general effect, see *Powell v. Springston Lumber Co.*, 12 Ida. 723, 88 Pac. 97; *Potlatch Lumber Co. v. Peterson*, 12 Ida. 769, 118 Am. St. 233, 88 Pac. 426; *La Veine v. Stack-Gibbs Lumber Co.*, 17 Ida. 51, 134 Am. St. 253, 104 Pac. 666; *Mashburn v. St. Joe Improvement Co.*, 19 Ida. 30, 113 Pac. 92. . See, also, *Moore v. Sanborne* and *Brown v. Chadbourne, supra,* and *Commrs. of Burke County v. Catawba Lumber Co.*, 116 N. C. 731, 47 Am. St. 829, 21 S. E. 941.

It having been determined, however, that Prichard creek is a navigable stream for the floating of logs and lumber does not dispose of the case. The person who undertakes to float logs and lumber down a stream must exercise reasonable care in order to avoid injury to the property of others. The fact that a stream is navigable does not give anyone a right to dump logs and timber into the stream and allow the same to go unattended and without being cared for, and as a consequence to form dams and divert the current of water to the injury and damage of others. No doubt the damages which a riparian proprietor may sustain as a natural and unavoidable consequence of the navigation of a stream either with boats and other craft or rafts and logs, where the same is conducted with due care and in a reasonably prudent manner, must be borne by such riparian proprietor as a natural and consequent injury under the rule of *damnum absque injuria*. (*Mashburn v. St. Joe Improvement Co.*, 19 Ida. 30, 113 Pac. 92, and note on page 840 of 47 Am. St.) On the other hand, the party who is attempting to navigate such a stream must exercise care proportionate to the dangers and

difficulties of the undertaking and the liability of inflicting injury upon others.  (*Commrs. of Burke County v. Catawba Lbr. Co.*, 116 N. C. 731, 47 Am. St. 829, 21 S. E. 941.)  If the exercise of such care will entail such an expense as to make the enterprise unprofitable, the result will necessarily be that he will not navigate the stream.  This, however, is a problem with which he is confronted and which he must solve at his own risk and responsibility.

The appellant when it placed its logs in Eagle creek did so with notice of the conditions of the stream and the situation of respondent's railroad grade and track.  Appellant owed respondent the duty of exercising reasonable care and diligence in looking after its logs and keeping them moving and preventing them piling up and jamming so as to inflict unnecessary damages on respondent.

Respondent, on the other hand, was charged with a corresponding duty when it undertook to build its railroad up Prichard creek.  It was chargeable with notice that Prichard creek was a stream capable of floating logs and lumber and that it might be used for such purpose.  It was also chargeable with notice of the natural conditions of the country and the frequency of floods and freshets.  It was likewise chargeable with notice that if anyone attempted to float logs or lumber down the stream, they would necessarily, in the course of such navigation, be likely to at some places and at some times strike the banks of the stream and that in doing so there would necessarily be some abrasions of the banks.  If the company sought to convert one bank of the stream into a railroad grade and track, it was under the necessity of exercising such reasonable precaution in building the grade and protecting the same as the nature of the stream and the natural conditions of the country and use of the stream for the floating of logs and lumber would demand of a reasonably prudent person.  It was also chargeable with due care and caution in the building and construction of bridges across the stream.  (*Commrs. of Burke County v. Lumber Co.*, 116 N. C. 731, 47 Am. St. 829, 21 S. E. 941.)  The railroad company is granted the right (under subd. 5, sec. 2796, Rev.

Codes) to build along and across navigable streams, but when it does so it must restore the stream or watercourse as nearly as possible to its original state or in as good condition as it found it; and under sec. 2798, such railroad company is authorized to bridge navigable streams, but in so doing it must not "impede or obstruct the navigation of such stream." In bridging a stream like Prichard creek, doing so may and probably will in some degree impair or render more difficult the navigation of the stream. Whether it has unreasonably and unnecessarily impaired or obstructed navigation is a question of fact to be determined from the evidence in the case. (*Small v. Harrington,* 10 Ida. 499, 79 Pac. 461.) The trial court found that the railroad company had properly constructed its grade and had built a sufficient and adequate bridge across the stream and used due care and diligence in these respects. These findings, however, were made on the theory that Prichard creek is a non-navigable stream. The court had previously made his finding that Prichard creek is non-navigable for the floating of logs. After it is determined that this stream is navigable for the floatage of logs, the trial court might find differently as to the care and precaution with which the railroad company has constructed its roadbed and bridges. (*Commrs. of Burke Co. v. Lumber Co., supra.*) The court may now conclude that the grade is either too low or improperly constructed and protected or that the bridges are not properly constructed. He may conclude that the openings under the bridge ought to be larger or the spans longer. The court, looking at the situation from the viewpoint that this is a navigable stream, may find differently as to the diligence and care exercised by either or both the appellant and respondent in this case.

For the foregoing reasons, the judgment is reversed and a new trial is granted. In the event it is satisfactory to both parties, the trial court may make new findings upon the evidence already submitted, and enter judgment in accordance therewith. If, however, it is desired by either party to introduce further proofs, a new trial will be granted for that

purpose. Judgment reversed and cause remanded. Costs awarded in favor of appellant.

Stewart, C. J., and Sullivan, J., concur.

Petition for rehearing denied.